Timothy HUGHES, Appellant,

v.

FINK, FINK AND ASSOCIATES
and Richard Fink, Esquire,
Appellees.

Superior Court of Pennsylvania.

Submitted June 2, 1998.

Filed Sept. 22, 1998.

Thomas F. Crawford, Langhorne, for appellant.

Mindy J. Snyder, Langhorne, for appellees.

Before KELLY, J., CERCONE, President Judge Emeritus, and MONTEMURO *, J.

MONTEMURO, Judge:

Appellant, Timothy Hughes, appeals from the September 11, 1997 Order of the Bucks County Court of Common Pleas granting Appellees motion for judgment of non pros and dismissing Appellant's complaint with prejudice due to docket inactivity. Pursuant to a recent decision of our Supreme Court, we must vacate the trial court's order and remand this matter for a determination of whether Appellees suffered actual prejudice from the delay.

On November 16, 1992, Appellant filed a complaint against Appellees, a law firm and

* Retired Justice assigned to Superior Court.

one of its attorneys, alleging several causes of action in contract and tort arising from a fee dispute. The docket reflects activity through 1993, including preliminary objections and the filing of an answer and new matter. The last docket entry for that year was August 16, 1993, when Appellant filed his response to Appellees' new matter. Thereafter there is no docket activity for two years and two weeks until, on September 1, 1995, the prothonotary of Bucks County filed a notice of termination announcing that the case would be dismissed if a certification of active status was not filed within 30 days. Appellant's counsel responded by returning a signed certificate of active status along with the requisite five dollar fee. There was no further docket activity for over a year and nine months until June 30, 1997, when Appellant filed a motion to compel discovery.

■ On July 18, 1997, Appellees filed a motion for judgment of non pros. After consideration, the trial court granted Appellees' motion and dismissed Appellant's complaint with prejudice. This timely appeal follows.[1]

■ The decision of whether to enter judgment of non pros against a plaintiff for failure to prosecute an action within a reasonable time is a matter vested within the sound discretion of the trial court whose decision will not be reversed absent an abuse of that discretion. *Chase v. National Fuel Gas Corp.*, 692 A.2d 155, 156 (Pa.Super.1997). In *James Bros. Lumber Co. v. Union Banking & Trust Co. of DuBois*, 432 Pa. 129, 247 A.2d 587 (1968), our Supreme Court announced that judgment of non pros is properly entered when: (1) a party to the proceeding has shown a want of due diligence in failing to proceed with reasonable promptitude; (2) there is no compelling reason for the delay; and (3) the delay has caused some prejudice to the adverse party. *Id.* at 132, 247 A.2d at 589. Many years later, in *Penn*

*Piping, Inc. v. Insurance Co. of North America*, 529 Pa. 350, 603 A.2d 1006 (1992), the Court, while preserving the first two elements of this three part analysis, refined the prejudice prong and held that "in cases involving a delay for a period of two years or more, the delay will be presumed prejudicial for purposes of any proceeding to dismiss for lack of activity on the docket." *Id.* at 356, 603 A.2d at 1009.

Recently, the standard governing the entry of judgment of non pros was again reexamined in a trio of cases decided by our Supreme Court. In *Jacobs v. Halloran*, 551 Pa. 350, 710 A.2d 1098 (1998), the Court abandoned the presumption of prejudice first announced in *Penn Piping, supra,* and, citing the equitable principles underlying the entry of a judgment of non pros, concluded that

the presumption is inconsistent with the well-established notion that the adversary must suffer harm before a case is dismissed for lack of prosecution.... In cases where no activity has occurred for a period of two years, but the defendant has not lost his ability to adequately prepare a defense, it serves no equitable purpose to dismiss the plaintiff's case solely due to the passage of time.... [Thus, t]he effect of our decision today is to return to the three part test of *James Brothers*.

*Jacobs*, 551 Pa. at ———–———, 710 A.2d at 1102–03. Therefore, before a case may be dismissed for lack of activity pursuant to a defendant's motion for non pros, it must be shown that the delay caused actual prejudice. *Id.* at ———, 710 A.2d at 1103.

In the companion case of *Shope v. Eagle*, 551 Pa. 360, 710 A.2d 1104 (1998), the Court held that the same standard announced in *Jacobs* applies both to terminations pursuant to a defendant's motion for judgment of non pros and a trial court's dismissal of an action for inactivity on its own initiative pursuant to local rules implementing Rule of Judicial Administration 1901,[2] relating to the prompt

---

1. Generally, relief from judgment of non pros must be sought first through a petition to open or strike presented to the trial court; thus a direct appeal does not lie from the entry of judgment of non pros. Pa.R.C.P. 3051; *Xu Xu v. Montefiore Hospital*, 422 Pa.Super. 114, 115, 618 A.2d 1043, 1044 (1993), *appeal denied*, 536 Pa. 631, 637

A.2d 291·(1993). However, where, as here, the trial court's order is in the nature of a hybrid, i.e., entering judgment of non pros and dismissing the action with prejudice, the order is considered final and directly appealable.

2. Rule of Judicial Administration 1901 provides in pertinent part:

disposition of matters and the termination of inactive cases. *Id.* 551 Pa. at 369, 710 A.2d at 1107–08. The third case of the *Jacobs'* trio, *Marino v. Hackman*, 551 Pa. 369, 710 A.2d 1108 (1998), involved a dismissal by the trial court pursuant to a local rule implementing Pa.R.J.A.1901, and held that in examining the second prong of the non pros test for inactivity, i.e., whether there were compelling reasons for the delay, a court may consider evidence of non-docket activities. *Id.* 551 Pa. at ——, 710 A.2d at 1111 (finding abuse of discretion in trial court's dismissal for inactivity where there was an "unusual amount" of non-docket activity which, in combination, justify a delay in docket inactivity; non-docket activity revealed case was proceeding, albeit slowly, towards disposition.)

We must now apply these principles to the instant case. Appellant first claims that because the trial court relied upon *Penn Piping* and its two year presumption of prejudice, this matter must be remanded for a determination of whether Appellees suffered actual prejudice from the delay. Alternatively, Appellant contends that, in light of the recent Supreme Court decisions, this matter should be remanded for a determination of whether, considering the non-docket activity in this case, compelling reasons exist for the delay in prosecution. For purposes of clarity, we will address these issues in reverse order, and review the trial court's determination as to each prong of the *Jacobs'* non pros analysis. We start first with an examination of due diligence.

Although the trial court in the instant case did not have the benefit of the *Jacobs, Shope,* and *Marino* decisions before deciding Appellees' motion for judgment of non pros, it nevertheless examined Appellant's alleged non-docket activity and found a lack of both due diligence and compelling reasons for the delay. In reviewing the docket, the court found no significant activity, other than the prothonotary's notice of termination, for a period of almost four years, i.e., from August 16, 1993 when Appellant responded to Appellees' new matter, to June 30, 1997 when Appellant filed a motion to compel discovery. Although the docket does reveal Appellant's September 18, 1995 filing of a certificate of active status, the court determined that this filing "was neither substantial in nature nor exemplary of the type of positive docket activity contemplated by the Court in *Penn Piping, supra.*" (Trial Ct. Op. at 2–3).

■■■ We agree that merely filing a certificate of active status and paying the nominal filing fee is not enough to establish due diligence and preclude the entry of a judgment of non pros based on inactivity, especially when, as here, Appellant filed the certificate of active status and thereafter failed to do anything, docketed or otherwise, to move the case forward for almost two years. *See* Trial Ct. Op. at 2 (stating that although Appellant filed certificate of active status on September 18, 1995, nothing appears on the docket or is alleged by Appellant to have happened until June 30, 1997, over 21 months later, when he filed a motion to compel discovery). *See also Pine Twp. Water Co. v. Felmont Oil Corp.,* 425 Pa.Super. 473, 478–79, 625 A.2d 703, 706 (1993), *appeal denied,* 537 Pa. 665, 644 A.2d 1202 (1994)(holding plaintiff's praecipe to remove case from termination list was insufficient to establish due diligence and preclude entry of non pros). Due diligence requires more than merely filing a certificate of active status.

■■■ Appellant also claims that the non-docketed, "substantive discovery" in which he engaged illustrates his due diligence and willingness to proceed in this matter with reasonable promptitude. (Appellant's Brief at 10). While the trial court is free to consider

**Rule 1901. PROMPT DISPOSITION OF MATTERS: TERMINATION OF INACTIVE CASE**

(a) General Policy. It is the policy of the unified judicial system to bring each pending matter to a final conclusion as promptly as possible consistently with the character of the matter and the resources of the system. Where a matter has been inactive for an unreasonable period of time, the tribunal, on its own motion, shall enter an appropriate order terminating the matter.

(b) Primary Responsibility for Implementation of Policy.

1. Each court of common pleas is primarily responsible for the implementation of the policy expressed in subdivision (a) of this rule and is directed to make local rules of court for such purposes....

Pa.R.J.A.1901(a), (b)(1).

the specific circumstances of each case, including non-docket activity, when determining whether due diligence is exhibited, *State of the Art Medical v. Aries Medical, Inc.*, 456 Pa.Super. 148, 156–58, 689 A.2d 957, 962 (1997), *rev'd and remanded on other grounds* pursuant to *Jacobs*, 550 Pa. 570, 707 A.2d 1140 (1998), we agree with the trial court that Appellant's alleged "substantive discovery" falls short of establishing this prong of the analysis. Although the evidence does reveal that Appellant conducted discovery in the nature of interrogatories, requests for admissions, and requests for production of documents, we note that this non-docketed discovery upon which Appellant relies occurred only during March and April of 1995. Thus, incredibly, it is Appellant's position that despite the fact that almost four years have elapsed without docket activity, a mere two months of non-docketed discovery is sufficient to establish due diligence. We are unpersuaded.

Appellant's primary claim on appeal challenges the trial court's findings as to the second and third prong of the non pros analysis relating, respectively, to the compelling reasons offered for the delay and the actual prejudice suffered by the defendant. First, Appellant challenges the trial court's failure to find that compelling reasons existed for the delay in prosecution. Appellant argues the following non-docket activity establishes a compelling reason which precludes the entry of a judgment of non pros: (1) Appellees' failure to respond to discovery requests caused the delay; and (2) Appellant's incarceration during the relevant time period is an extenuating circumstance that should excuse any delay. (Appellant's Brief at 14).

In *Penn Piping, supra*, the Court found that, although the determination should be made on a case-by-case basis, compelling reasons for delay will automatically be found in "cases where the delaying party establishes the delay was caused by bankruptcy, liquidation, or other operation of law, or in cases awaiting significant developments in the law." *Id.* at 356 n. 2, 603 A.2d at 1009 n. 2. Recently, in *Marino, supra*, the Supreme Court agreed with the *Penn Piping* rule that each case must be examined on its merits and further recognized that "some activities which are beyond the control of the plaintiff can cause delay in prosecution yet are not required to be docketed." *Marino*, 551 Pa. at ——, 710 A.2d at 1111. Thus, in holding that non-docket activity can be examined by a trial court when deciding whether compelling reasons exist for the delay, the Court explained that "[a]lthough the docket provides an empirical, easily verifiable criterion to trigger review of a case, it is too crude a mechanism to distinguish truly inactive, stale cases from active ones where activity is not reflected on the docket. Dismissal of a case is far too harsh a result when the case is not actually stale but moving slowly forward."[3] *Id.* at ——, 710 A.2d at 1111. Moreover, in determining what constitutes a compelling reason for delay, a trial court should focus on whether the events which allegedly impeded progress were beyond the plaintiff's control. *Chase*, 692 A.2d at 156 (citing *MacKintosh–Hemphill International Inc. v. Gulf & Western Inc.*, 451 Pa.Super. 385, 394–96, 679 A.2d 1275, 1280 (1996), *appeal denied*, 548 Pa. 637, 694 A.2d 622 (1997)).

In the instant case, Appellant blames the lengthy delay on Appellees' failure to produce requested documents and claims that Appellees "should not be allowed to delay discovery and the prosecution of the case and then be rewarded by a judgment of non pros." (Appellant's Reply Brief at 5). This argument is unpersuasive. We remind Appellant of the well-established rule that it is the plaintiff's responsibility to move the case forward, *Pine*, 425 Pa.Super. at 478–79, 625 A.2d at 706, and the *plaintiff* who bears the risk of judgment of non pros if he fails to act within a reasonable time to prosecute his case. This Court has stated that " '[i]f plain-

---

**3.** We find that although *Marino* involved a dismissal for inactivity pursuant to a local rule implementing Pa.R.J.A.1901, the rule announced in that case regarding the consideration of non-docket activity applies equally to cases involving terminations pursuant to a defendant's motion for a judgment of non pros. *See Shope*, 551 Pa. at ——, 710 A.2d at 1108 (holding that the same standard announced in *Jacobs, supra*, applies to both terminations pursuant to a motion for non pros as well as terminations pursuant to local rules implementing Pa.R.J.A.1901).

tiff's counsel finds [himself] faced with delays created by others, [he] must take action to move the case forward, such as filing praecipes for argument on undecided motions, moving to compel [his] opponent to file a certificate of readiness, or requesting a conference with the judge ... to have the case put on the trial list.'" *Pilon v. Bally Engineering Structures*, 435 Pa.Super. 227, 233, 645 A.2d 282, 285 (1994), *appeal denied*, 539 Pa. 680, 652 A.2d 1325 (1994) (citation omitted).

 Thus, as soon as Appellant discovered that Appellees' response to the request for production was incomplete, a motion to compel discovery should have been filed. Here, however, Appellees responded to the discovery request in May 1995 and Appellant waited for over two years before filing a motion to compel discovery on June 30, 1997. Therefore, although Appellant attempts to establish a compelling reason for delay in Appellees' alleged failure to comply with discovery requests, we find that it is actually Appellant who is responsible for the delay in failing to move this matter forward by timely filing a motion to compel. This chain of events does not present an example, as discussed in *Marino*, of an "unusual amount" of non-docket activity or of on-going discovery merely moving the case slowly toward disposition; rather Appellant failed to pursue any type of relief for over two years. This clearly does not present a compelling reason for delay.

Indeed, in his very next argument Appellant essentially admits that he knowingly failed to move this case forward since he "was trying to avoid going to trial while imprisoned." (Appellant's Brief at 13). Appellant was incarcerated for two years and eight months, from July 27, 1994 to March 10, 1997. Although he did not present this argument to the trial court, Appellant now claims that it was "attorney strategy" that produced the delay, since he "believed that coming into the court under the auspices [sic] of handcuffs and prison guards would cast him in an unfavorable and unsympathetic light to the jury and judge. Plaintiff might as well not try the case, because the prejudice to plaintiff is real and substantial in the minds of the jury." (Appellant's Brief at 13). It is well settled that issues which are not asserted in the trial court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a); *Brown v. Herman*, 445 Pa.Super. 305, 314–16, 665 A.2d 504, 509 (1995), *aff'd*, 547 Pa. 352, 690 A.2d 232 (1997). This issue is not properly before this Court, and, therefore, cannot be considered a compelling reason for delay. Thus, we agree with the trial court's conclusion that Appellant has failed to establish both due diligence and compelling reasons for the delay in prosecution.

 Finally, we address the third prong of the non pros analysis—prejudice to the defendant. Appellant argues that pursuant to *Jacobs*, this matter must be remanded for a determination of actual prejudice. We agree. The trial court, relying on the presumption of prejudice announced in *Penn Piping*, concluded that because there was no significant docket activity for a period of over two years, Appellees were not required to prove actual prejudice. (Trial Ct. Op. at 5). Since *Jacobs* has now abandoned this presumption and Appellant has preserved the issue, we must remand this matter for a determination of whether Appellee was actually prejudiced by the delay in prosecution.

Order granting judgment of non pros and dismissing Appellant's complaint is vacated. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.